## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JACK L. SLINGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:17-cv-00723** |
| | ) | |
| **THE PENDAFORM COMPANY f/k/a** | ) | **JUDGE CAMPBELL** |
| **PENDA CORPORATION,** | ) | **MAGISTRATE JUDGE** |
| | ) | **NEWBERN** |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 34, 35). Plaintiff filed a response in opposition (Doc. No. 40), and Defendant has replied. (Doc. No. 46). For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

## I. FACTUAL BACKGROUND

In 2011, The Pendaform Company ("Defendant") was an extruder and a thermoformer of plastic parts and components. (Doc. No. 35 at 3). At the time, Penda had two manufacturing plants in Portage, Wisconsin and Lerma, Mexico. (*Id.*). On July 11, 2011, Jack Slinger ("Plaintiff") entered into an Employment Agreement (the "Contract") with Defendant to become its President and CEO. (Doc. No. 44 at 1). The Contract defined Plaintiff's "Employment Period" as going through July 11, 2014, and was later amended to extend the Employment Period to July 11, 2017. (*Id.*). The Contract also defined Plaintiff's position, duties, and how Plaintiff's duties may be changed. (Doc. No. 1-1, at 1).

In 2016, TriEnda Holdings, LLC ("TriEnda") purchased Defendant. (Doc. No. 44 at 2). David Kruger ("Kruger") is the President of TriEnda and John Brown ("Brown") is the CEO. (*Id.* at 2). On December 22, 2016, TriEnda and Defendant negotiated the terms of the acquisition

agreement, as well as Plaintiff's future role with the Company. (*Id.* at 3). On December 22, 2016, TriEnda announced its acquisition of Plaintiff and that Kruger would serve as CEO and Brown would serve as President. (Doc. No. 1-1, Ex. 3). Following the acquisition, Defendant's Board decided to limit Plaintiff's duties and responsibilities and required Plaintiff to work from home, forward emails, and make himself available to answer any questions. (*Id.* at 5). Defendant decided to keep Plaintiff on the payroll until the end of his employment period on July 11, 2017. (*Id.*).

On February 23, 2017, and while still being paid by Defendant, Plaintiff traveled to Defendant's New Concord, Ohio facility to gather some of his personal belongings. (*Id.* at 6). While at the facility, Plaintiff told five (5) key employees[1] "don't be the last man standing," which many of the employees took to mean their jobs were in jeopardy. (*Id.* at 7-8). The following day, Gary Oliver ("Oliver") emailed his supervisor about Plaintiff's comment, which was forwarded to Kruger. (*Id.* at 8). On Monday, February 27, 2017, Kruger spoke with Sue Long ("Long"), the Human Resources Manager about the email. (*Id.* at 9). They discussed the email from Oliver, and Kruger asked Long to obtain statements from the five employees so they "could get to the bottom of what exactly happened." (*Id.*). Long conducted an investigation, which consisted of calling employees who worked in the New Concord facility to ask if they spoke with Plaintiff. (*Id.*). Long reported to Kruger that five (5) employees told her Plaintiff told the employees "Goodbye, take care," shook their hand and said, "don't be the last man standing." (*Id.* at 10). Kruger took Plaintiff's comments to mean he was encouraging employees to resign and that the employees took Plaintiff's comments to mean they needed to look for another job. (*Id.* at 11). Kruger

---

[1] Amy Hoefler, Abby Schockling, Jeremy Mohler, Becky White, and Gary Oliver. (Doc. No. 44 at 6).

discussed the findings of the investigation with the Board and informed the Board that Plaintiff was going to be terminated for cause. (*Id.* at 11).

On February 28, 2017, Kruger terminated Plaintiff for cause and documented the decision in a letter to Plaintiff. (*Id.* at 12). Following his termination, Plaintiff filed this action, alleging breach of contract for constructive discharge, or in the alternative breach of contract for pretextual termination with cause and declaratory judgment. (Doc. No. 1-1). Plaintiff alleges Defendant constructively discharged him by limiting his duties as CEO and President, and therefore terminated him without cause, thereby entitling him to severance payments. (*Id.*). Alternatively, Plaintiff alleges he did not engage in any conduct that would provide a basis for a termination with cause under the terms of the Contract. (*Id.*). Plaintiff alleges Defendant's claimed reason for his termination was merely pretextual for terminating Plaintiff's employment to avoid paying him through the remainder of his Contract. (*Id.*). Defendant denies breaching the Contract and argues Plaintiff cannot prove his termination for cause was pretextual, because Plaintiff violated the clear meaning of the Contract by attempting to solicit employees to resign their employment. (Doc. No. 34).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element

of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.    ANALYSIS

#### A.  Contract Interpretation

The parties do not dispute that the Contract is governed by Wisconsin law. (Doc No. 1-1 at 25).[2] When the terms of a contract are clear and unambiguous, the Court construes the contract according to its express terms. *Maryland Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15 (Wis. 2017). "The intent of the parties' is evidenced by the words they chose, if the words are unambiguous." *Kernz v. J.L. French Corp.*, 667 N.W.2d 751 (Wis. Ct. App. 2003). Courts construe contracts according to their plain or ordinary meaning, which is consistent with "what a reasonable person would understand the words to mean under the circumstances." *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426 (Wis. 2004). Courts construe contracts as they are written, and

---

[2] "This Agreement shall be governed by and construed in accordance with, the internal substantive laws of the State of Wisconsin." (Doc. No. 1-1, sec. 17).

ultimately "the office of judicial construction is not to make contracts. . . but to determine what the parties contracted to do." *Marion v. Orson's Camera Centers, Inc.*, 138 N.W.2d 733 (Wis. 1966) (quoting *Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin*, 69 N.W. 354 (Wis. 1896)).

## B. Breach of Contract for Termination Without Cause

In Count I, Plaintiff asserts Defendant constructively discharged him by removing him from his position as President and CEO and stripping him of all functions, responsibilities, and roles with the Company. (Doc. No. 1-1). Plaintiff argues that due to the constructive discharge and the "Change in Control" he was Terminated Without Cause, and entitled to twenty-four (24) months of severance payments and continued medical benefits. (*Id.*).

Subparagraph 6(b) of the contract provides for severance payments in certain circumstances:

> (b) Subject to Executive's compliance with subparagraph 6(d) and paragraph 7, if the Employment period ends early pursuant to paragraph 5 on account of a Termination Without Cause that occurs during the Employment Period, the Company shall continue to pay Executive his Base Salary at the time of such termination, in accordance with the Company's normal payroll practices, for a period of twelve (12) months following such Termination Without Cause; <u>provided however</u> if such Termination Without Cause is required in connection with a Change in Control then such period will be extended by an additional twelve (12) months for a total of twenty-four (24) months.

Paragraph 8 defines "Change in Control" as:

> (a)(i) The Company is merged or consolidated or reorganized into or with another corporation or other legal person, and as a result of such merger, consolidation or reorganization less than a majority of the combined voting power of the then-outstanding securities of such corporation or person immediately after such transaction are held in the aggregate by the holders of shares of common Stock of the Company outstanding immediately prior to such transaction;

Paragraph 8 also defines "Termination Without Cause" as:

> (e) …termination by the Company or any subsidiary of Executive's employment with the Company or any subsidiary for any reason other than a termination for Permanent Disability or a Termination for Cause and shall not include the

Company's failure to extend the Employment Period pursuant to subparagraph 5(b).

The doctrine of constructive discharge "recognizes that some resignations are coerced, tantamount to a termination." *Strozinsky v. School Dist. of Brown Deer*, 614 N.W.2d 443, 461 (Wis. 2000).[3] "The law of constructive discharge, however, recognizes that an employer may make working conditions so intolerable that an employee may reasonably feel compelled to resign." *Tennyson v. School Dist. of Menomonie Area*, 606 N.W.2d 594, 602 (Wis. Ct. App. 1999) (citing *Turner v. Anheuser–Busch, Inc.*, 876 P.2d 1022, 1025 (Cal. 1994)). "In an attempt to avoid liability, an employer may refrain from actually firing an employee, preferring instead to engage in conduct causing him or her to quit. The doctrine of constructive discharge addresses such employer-attempted 'end runs' around wrongful discharge and other claims requiring employer-initiated terminations of employment." *Beidel v. Sideline Software, Inc.*, 842 N.W.2d 240, 254 (Wis. 2013). A constructive discharge is therefore legally regarded as a firing rather than a resignation. *Tennyson*, 606 N.W.2d at 602. When an employer acts in a manner so as to have communicated to a reasonable employee that he will be terminated and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge. *See Cigan v. Chippewa Falls Sch. Dist.,* 388 F.3d 331, 333 (7th Cir. 2004) (applying Wisconsin law). "A working condition does not become intolerable or unbearable merely because a prospect of discharge lurks in the background." *Cigan,* 388 F.3d at 333.

Defendant argues Plaintiff is not entitled to two years of severance pay because Plaintiff was not terminated in connection with nor was his termination required by the change in control.

---

[3] The Wisconsin Court of Appeals has held a plaintiff can bring a cause of action for breach of contract based on constructive discharge. *See Tennyson v. School Dist. of Menomonie Area*, 606 N.W.2d 594, 601 (Wis. Ct. App. 1999). Therefore, the Court will apply Wisconsin law to the constructive discharge claim because the claim relates to the Contract.

(Doc. No. 35 at 16). Defendant states that Plaintiff cannot satisfy the main element for constructive discharge: a resignation. (*Id.* at 17). Rather, Defendant utilized the provisions of the Employment Agreement and limited Plaintiff's duties, responsibilities, and authority, all while Plaintiff continued to receive his regular compensation and benefits.[4] (*Id.*). Defendant finally argues that Plaintiff cannot show his work conditions were intolerable to the point that a reasonable person would have been compelled to resign, because Plaintiff was simply instructed to work from his home, forward e-mails, and make himself available to answer questions. (*Id.* at 18).

Plaintiff responds that while the Employment Agreement allows for Defendant to limit his duties and responsibilities, express language in the contract states that Plaintiff, "**shall** serve as the President and Chief Executive Officer of the Company and **shall** have the normal duties, responsibilities, authority of an executive serving in such a position." (Doc. No. 40 at 9; 1-1 at 1) (emphasis added). Plaintiff argues the word "shall" in Section 3(a) of the Employment Agreement mandates that Plaintiff serve as President and CEO, and Defendant's decision to remove him as President and CEO was tantamount to termination without cause, entitling him to two years of severance pay. (Doc. No. 40 at 9-10). In diminishing Plaintiff's duties and responsibilities, Defendant constructively discharged him, and in reality terminated him without cause. (Doc. No. 40 at 10). Plaintiff cites to *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88 (Tenn. 1999), in which the Court held the plaintiff was constructively terminated from his employment without cause and was

---

[4] Subparagraph 3(a) of the Employment Agreement states:

> During the Employment Period, Executive shall serve as the President and Chief Executive Officer of the Company and shall have the normal duties, responsibilities, and authority of an executive serving in such positions, subject to the power of the Board of Directors of the Company ("the <u>Board</u>") **to expand or limit such duties, responsibilities, and authority, either generally or in specific instances.**

(emphasis added)

entitled to severance pay after his job duties were diminished. (*Id.* at 10-11). Plaintiff argues the facts in *Guiliano* are identical to his case, and the Court should find he was effectively terminated without cause. (Doc. No. 40 at 11-12). Finally, Plaintiff argues his termination was in connection to a Change in Control, entitling him to two years of continued base pay, because TriEnda's acquisition of PendaForm constitutes a "Change in Control" as defined by the Contract. (*Id.* at 12). And the Merger Agreement expressly stated Plaintiff would be terminated as President and CEO of the Company after the completion of the merger. (*Id.* at 13).

Before determining whether Plaintiff was constructively discharge, the Court first addresses Plaintiff's argument regarding whether the Contract possesses mandatory language requiring Plaintiff to serve as President and CEO throughout his entire employment period. *See* Doc. No. 40 at 9-10; Doc. No.1-1 at 1. Under Plaintiff's Contract, he was employed as the President and CEO, and the agreement provides that he "**shall** serve as the President and Chief Executive Officer of the Company." (Doc. No. 1-1 at 1 ¶ 3(a)) (emphasis added). In the same paragraph, the agreement indicates he "**shall** have the normal duties, responsibilities, and authority of an executive serving in such a position. . ." (*Id.*) (emphasis added). In Plaintiff's view, because the Contract did not provide any other capacity in which Plaintiff could serve, the limiting of duties and removing him from CEO and President breached the Contract and was effectively a "termination without cause." While true that the Contract provides that Plaintiff shall have such duties and authority as is customarily associated with such CEO position, the clause cannot be read in a vacuum. In Plaintiff's view, the clause is tantamount to a guarantee of employment as the Company's President and CEO, no matter what. But Plaintiff ignores the Contract as a whole, which provides a framework for the parties' obligations and rights if circumstances change. Plaintiff's argument that he was entitled to serve as President and CEO at all times, directly

contradicts the multiple paragraphs detailing what would happen, for example, if Plaintiff were to resign or if company decided to terminate his employment. (Doc. No. 1-1 at 5 ¶(c)). In fact, the Contract provides that the executive's employment will terminate upon death, resignation, disability, or upon the decision of the Board to terminate his employment, with or without cause. (*Id.*). The plain language of the Contract also provides a notice of renewal, in which "the Company shall have the option to extend the Employment Period for an additional year." (*Id.* ¶ (b)). If the Board could terminate Plaintiff's employment without cause or extend Plaintiff's employment period, it follows that it could change his job duties as well without breaching the Contract. *See Verfuerth v. Orion Energy Sys., Inc.*, 2016 WL 4507317, at *11-12 (E.D. Wisc. Aug. 25, 2016) (finding that when read in its entirety, the employment agreement contemplates that either party may end the employment relationship, with or without cause, and in no event was the company obligated to keep plaintiff as the CEO if it chose not to).

The Court turns to whether Plaintiff was constructively discharged, and, as Plaintiff argues, terminated without cause under the Contract. Plaintiff asserts Defendant chose not to terminate him because it was best for the company to not pay Plaintiff's severance and instead pay Plaintiff under his contract and simply limit Plaintiff's duties and responsibilities until his Contract expired. (Doc. No. 35 at 10; Doc. No. 40 at 10; Kruger Dep. 24:1-25:5). However, to demonstrate constructive discharge Plaintiff must show he resigned. *See generally Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331 (7th Cir. 2004). Even if the Court were to find Defendant stripping away all of Plaintiff duties and responsibilities created an intolerable working condition,[5] at no point did

---

[5] *See Verfuerth v. Orion Energy Sys., Inc.*, 2016 WL 4507317, at *14 (E.D. Wis. Aug. 25, 2016) ("Putting to one side the questionable premise that a jury would find it "intolerable" to receive a CEO's salary while doing no work, the point is that it does not matter. There is no independent right to have a job that is "tolerable." Many people quit their jobs because they are intolerable, but

Plaintiff resign. *See generally E.E.O.C. v. Miller Brewing Co.*, 650 F.Supp. 739, 740-41 (E.D. Wis. Dec. 29, 1986) (plaintiff submitted a letter of resignation after being constructively discharged because defendant failed to promote him); *Kolpien v. Family Dollar Stores of Wisconsin, Inc.*, 402 F. Supp. 2d 971, 979-80 (W.D. Wis. Nov. 28, 2005) (plaintiff resigned from her employment after supervisor's harassment); *Mercer v. City of Fond du Lac*, 780 N.W.2d 188, 191 (Wis. Ct. App. 2009) (plaintiff submitted his written resignation five days after a council meeting); *Beidel v. Sideline Software, Inc.*, 811 N.W.2d 856, 863 (Wis. Ct. App. 2012) (the circuit court opined there was no genuine issue of material fact because there was no actual resignation by the employee). Instead, Plaintiff stayed on the payroll and continued to receive his regular CEO salary. (*See* Doc. No. 35-2, Pl. Depo. 60:24-61:9). Plaintiff's claim for two years of severance payments fails because Plaintiff cannot establish he was terminated because he stayed on the payroll and continued to receive a salary.[6] Plaintiff also cannot establish the elements for constructive discharge, because Plaintiff never resigned once his duties and responsibilities as CEO were diminished. The Court therefore **GRANTS** Defendant's motion as to Count I for breach of contract by constructive discharge.

### C. Breach of Contract for Pretextual Termination With Cause

In the alternative, Plaintiff alleges his Contract entitles him to one (1) year of severance pay because his termination "for cause" was merely pretextual. (Doc. No. 40 at 13). Defendant asserts the evidence shows Plaintiff's termination was "for cause" because the Contract includes a non-solicitation cause which states:

---

they do not get to sue their employers unless the jobs were rendered intolerable by something proscribed by statute or contract.").

[6] Plaintiff cites to *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88 (Tenn. 1999), which has very similar facts to the instant case, but the Court is not bound to follow this case given the parties' choice of Wisconsin law.

7(d) <u>Non-Solicitation</u>. Executive will not directly or indirectly at any time during the period of Executive's employment or for a period of two (2) years thereafter, attempt to disrupt, damage, impair or interfere with the Company's Business by raiding any of the Company's employees or soliciting any of them to resign from their employment by the Company, or by disrupting the relationship between the Company and any of its consultants, agents, representatives or vendors. Executive acknowledges that this covenant is necessary to enable the Company to maintain a stable workforce and remain in business.

The Contract also includes a definition section that defines "Termination for Cause" as

8(e) . . . the termination by the Company or any subsidiary of Executive's employment with the Company or any subsidiary as a result of. . . (ii) conduct by Executive that brings the Company or any subsidiary or affiliate of the Company into substantial public disgrace or disrepute, (iii) gross negligence or gross misconduct by Executive with respect to the Company or any subsidiary or affiliate of the Company. . .

To prevail upon a showing of pretext alone, "a plaintiff must establish that the pretext existed to mask the employer's . . . motive." *Kovalic v. DEC Intern., Inc.*, 469 N.W.2d 224, 230 (Wis. Ct. App. 1991) (citing *Brown v. M&M/Mars*, 883 F.2d, 505, 510-11 (7th Cir. 1989)).

Pretext means more than a mistake on the part of the employer; pretext "means a lie, specifically a phony reason for some action." ... The pretext inquiry focuses on the honesty-not the accuracy-of the employer's stated reason for the termination.... Thus, when the stated reason for termination is not the actual reason, it is pretexual.... The mere fact that the employer acted incorrectly or undesirably, however, cannot adequately demonstrate pretext; rather, the employee must prove that the employer did not honestly believe the reasons it gave for the firing. A plaintiff can prove the incredibility of the employer's proffered reasons are (1) factually baseless, (2) not the actual motivation for the discharge, or (3) insufficient to motivate the discharge.

*Coke v. Eau Claire Women's Care Service Corp.*, 2004 WL 2984826, at *7 (Wis. Ct. App. 2008) (citing *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997) (citations omitted). A complainant may establish pretext either directly by showing another reason likely motivated the employer or indirectly by showing the employer's proffered explanation to be unworthy of credence. *Puetz Motor Sales, Inc. v. Labor and Indus. Review Com'n*, 376 N.W.2d 372, 375-76 (Wis. Ct. App. 1985). "If a reasonable factfinder would be compelled to believe [the defendants']

explanation, then the [defendants are] entitled to summary judgment." *Culver v. Gorman & Co.,* 416 F.3d 540, 547–48 (7th Cir. 2005) (applying Wisconsin law).

Defendant argues Plaintiff was terminated for cause because he solicited employees to resign. (Doc. No. 35 at 20). Defendant argues Plaintiff told five employees at Penda's New Concord facility, "don't be the last man standing" and the five employees did not take Plaintiff's statements as good news for their jobs. (*Id.*). Under the plain meaning of the Contract, Defendant asserts Plaintiff's conduct shows he attempted to "disrupt, damage, impair, or interfere with the Company's Business by soliciting employees to resign." (*Id.* at 20-21). Defendant argues Kruger was led to believe Plaintiff attempted to disrupt Defendant's business by trying to get employees to resign, and Plaintiff did in fact engage in this conduct. (*Id.* at 21; Doc. No. 44 at 10-12). Defendant states Plaintiff cannot provide any evidence that Defendant's reason for terminating Plaintiff for cause was pretexual. (*Id.*).

Plaintiff asserts that Defendant's reason for ending his employment was simply to avoid paying Plaintiff through the term of his employment period. (Doc. No. 40 at 13). First, Plaintiff argues Defendant relies on 7(d) of the Contract in its motion for summary judgment, but Defendant's initial justification for terminating Plaintiff relies on Plaintiff's "gross misconduct" under Section 8(e)(iii) for the Contract. (*Id.* at 14). Plaintiff argues Defendant's reliance on different reasons for his termination shows Defendant's proffered reasons was not the actual motivation for his discharge. (*Id.*) (citing *Coke v. Eau Claire Women's Serv. Corp.,* 2004 WL 2984826, at *7 (Wis. Ct. App. Dec. 28, 2004)). Second, Plaintiff argues the evidence demonstrates that the conversations with the five employees on February 23, 2017, did not amount to gross misconduct nor solicitation of employees. (*Id.*). Plaintiff argues his comment did not encourage or solicit any employees to resign, nor did he intend for his comments to have that effect. (*Id.* at 14-

15). Furthermore, employees testified that Plaintiff's words were spoken in a friendly and light-hearted manner and no employee left or sought other employment as a result of the comment. (*Id.* at 15). Finally, Plaintiff argues Defendant terminated Plaintiff solely to avoid paying his salary through the remainder of his employment term, and Krueger made the decision to terminate Plaintiff minutes after receiving the employee's email regarding Plaintiff's visit and statement. (*Id.*). Plaintiff argues Defendant's decision to terminate him for cause was arbitrary and for an improper motive in order to avoid paying Plaintiff his severance. (*Id.* at 16).

Plaintiff can avoid summary judgment by pointing to specific facts that place the Defendant's explanation in doubt. *See deBoer Transp., Inc. v. Swenson*, 804 N.W.2d 658, 672-73 (Wis. 2011), *Begel v. Wisconsin Labor and Indus. Review Com'n*, 631 N.W.2d 220 (Wis. Ct. App. 2001). First, Plaintiff points to the fact Defendant relies on different sections of the Contract for his termination. However, Kruger told Defendant he was terminated for encouraging employees to quit in violation of section 7(d) of the contract, which is specifically referenced in section 8(e) of the Contract. Second, Plaintiff points to Kruger's deposition testimony and exhibits that showed the new owners included Plaintiff on a pre-merger termination list, and comments with respect to Plaintiff stated "Removed with no sev[erance]" (Doc. No. 42-1, Ex. 30). Kruger states that because Plaintiff's employment had an end date and the Company planned on keeping Plaintiff until his Contract expired the Company did not expect to pay Plaintiff a severance, thus the reason "no sev[erance]" was beside his name. (Kruger Depo. at 94-97). Finally, Plaintiff points to the fact that the employees he spoke to testified that they "thought nothing" of Plaintiff's comment and "never gave it a second thought" because they already knew their jobs were in likely in jeopardy. (Doc. No. 40 at 15; Hoefler Depo. at 17-18, White Depo, at 16, 26-27). However, all the employees signed affidavits stating "morale at the facility was adversely impacted," and they were "concerned

that Mr. Slinger's comments meant the Company was closing and/or that we should leave and find other employment before we lost our jobs" after Plaintiff's comment. (*Id.* at Ex. 24-28). After Kruger read the employee's email, Kruger took Plaintiff's comments to mean he was encouraging the employees to resign and look for another job. (Doc. No. 44 at 11).

Wisconsin courts have held that when assessing a plaintiff's claim that an employer's explanation is pretextual, the Court does not second guess an employer's facially legitimate business decisions. *DeBoer Transp., Inc. v. Swenson*, 781 N.W.2d 709 (Wis. Ct. App. 2010); *Ray Hutson Chevrolet, Inc. v. Labor and Indus. Review Com'n*, 519 N.W.2d 713 (Wis. Ct. App. 1994). To show pretext, Plaintiff must demonstrate that Defendant's reason for terminating Plaintiff with cause was a lie or lacked a factual basis. *Hogg v. Fraser Shipyards, Inc.*, 407 F.Supp. 2d 1027, 1037 (W.D. Wisc. Jan. 10, 2006) (citing *Ghosh v. Indiana Dept. of Envtl. Mgmt.*, 192 F.3d 1087, 1091 (7th Cir. 1999) ("Pretext is established if the plaintiff can show that the defendant's proffered reasons are either lies or completely lacking in factual basis")). Here, five employees stated Plaintiff's comment concerned them and believed they should find other employment.[7] (Doc. No. 42-1, Ex. 24-28). Even if Defendant's reason for terminating Plaintiff was a lie or mistaken, the Defendant honestly believed Plaintiff attempted to solicit employees to resign from their employment, in violation of the Contract. (Kruger Depo. at 68-69); *see also Hamilton v. Nat'l Propane*, 276 F. Supp. 2d 934, 947 (W.D. Wis. Feb 14, 2002) (citing *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir.1994) ("The pretext inquiry focuses on the honesty—not the accuracy—of the employer's stated reason for the termination.")). Because Defendant believed Plaintiff breached the Contract by soliciting employees, and the evidence Plaintiff points to does not

---

[7] Plaintiff states he does not remember telling employees "don't be the last man standing," but if he did he was not encouraging or soliciting them to resign or leave their employment with Defendant. (Doc. No. 43).

undercut the validity of that belief, summary judgment is appropriate in Defendant's favor for Plaintiff's breach of contract claim for pretextual termination with cause, and Defendant's motion is **GRANTED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE