IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JACK L. SLINGER, | ) |
| Plaintiff, | ) |
| | ) NO. 3:17-cv-00723 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| THE PENDAFORM COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In the aftermath of the transfer of this case from Judge Campbell to the undersigned, the Court has undertaken with considerable attention to determine what needs to be done next in this case. In particular, with input from each party, the undersigned has endeavored to determine the extent to which the bench trial held before Judge Campbell should be reopened prior to the undersigned issuing findings and fact and conclusions of law pursuant to Fed. R. Civ. P. 55 and judgment pursuant to Fed. R. Civ. P. 58.

In this case, Plaintiff claims that under the terms of the Employment Agreement (Doc. No. 1-1 at 14-28, "Employment Agreement" or "Agreement"), Defendant owes him severance pay after terminating him from his employment as chief executive officer and president of Defendant. Under subparagraph 6(b) the Employment Agreement, Plaintiff would (subject to a condition not relevant here)[1] receive twelve months of pay as severance if he lost his job via "termination without cause." (*Id.* at 16). One way Plaintiff could be fired for cause rather than without cause—and thus receive

---

[1] The condition is Plaintiff's "compliance" with subparagraph 6(b) and paragraph 7 of the Employment Agreement. (Doc. No. 1-1 at 16). It is not relevant here, for the reasons discussed below.

1

no severance—was by violating a non-solicitation clause set forth in subparagraph 7(d) of the Employment Agreement ("Non-Solicitation Clause"):

> (d) Non-Solicitation. *Executive will not directly or indirectly at any time during the period of Executive's employment or for a period of two (2) years thereafter, attempt to disrupt, damage, impair or interfere with the Company's Business by* raiding any of the Company's employees or *soliciting any of them to resign from their employment by the Company,* or by disrupting the relationship between the Company and any of its consultants, agents, representatives or vendors. Executive acknowledges that this covenant is necessary to enable the Company to maintain a stable workforce and remain in business.

(*Id.* at 19 & Trial Ex. 1 (joint)) (emphasis added). Defendant has consistently argued that this is exactly what happened—*i.e.*, that Plaintiff was fired for cause, *i.e.*, his violation of the Non-Solicitation Clause, in particular the aspects of it set forth in italics above. For this reason, according to Defendant, Plaintiff is not entitled to severance pay. Plaintiff has responded that he did not violate the Non-Solicitation Clause and that in any event the Non-Solicitation Clause is unenforceable and thus offers no defense to his claim that Defendant breached his Employment Agreement by denying him severance pay.[2]

PROCEDURAL POSTURE

This case was reassigned to the undersigned after a one-day bench trial before District Judge William L. Campbell, Jr., but before Judge Campbell had issued findings of fact and conclusions of law pursuant to Rule 52. The Court (with the undersigned now presiding) had ordered that it would receive testimony from Plaintiff and from defense witness David Kruger, each of whom testified at the prior bench trial, to help the undersigned assess their credibility as

---

[2] As the Court previously has noted, (Doc. No. 105), it is proceeding as if Plaintiff's claim is currently being pursued exclusively under the rubric of Count II of the Complaint, which asserts a straightforward claim of breach of contract (the Employment Agreement). (Doc. No. 1-1 at 11-12).

no severance—was by violating a non-solicitation clause set forth in subparagraph 7(d) of the Employment Agreement ("Non-Solicitation Clause"):

> (d) Non-Solicitation. *Executive will not directly or indirectly at any time during the period of Executive's employment or for a period of two (2) years thereafter, attempt to disrupt, damage, impair or interfere with the Company's Business by* raiding any of the Company's employees or *soliciting any of them to resign from their employment by the Company,* or by disrupting the relationship between the Company and any of its consultants, agents, representatives or vendors. Executive acknowledges that this covenant is necessary to enable the Company to maintain a stable workforce and remain in business.

(*Id.* at 19 & Trial Ex. 1 (joint)) (emphasis added). Defendant has consistently argued that this is exactly what happened—*i.e.*, that Plaintiff was fired for cause, *i.e.*, his violation of the Non-Solicitation Clause, in particular the aspects of it set forth in italics above. For this reason, according to Defendant, Plaintiff is not entitled to severance pay. Plaintiff has responded that he did not violate the Non-Solicitation Clause and that in any event the Non-Solicitation Clause is unenforceable and thus offers no defense to his claim that Defendant breached his Employment Agreement by denying him severance pay.[2]

PROCEDURAL POSTURE

This case was reassigned to the undersigned after a one-day bench trial before District Judge William L. Campbell, Jr., but before Judge Campbell had issued findings of fact and conclusions of law pursuant to Rule 52. The Court (with the undersigned now presiding) had ordered that it would receive testimony from Plaintiff and from defense witness David Kruger, each of whom testified at the prior bench trial, to help the undersigned assess their credibility as

---

[2] As the Court previously has noted, (Doc. No. 105), it is proceeding as if Plaintiff's claim is currently being pursued exclusively under the rubric of Count II of the Complaint, which asserts a straightforward claim of breach of contract (the Employment Agreement). (Doc. No. 1-1 at 11-12).

witnesses. (Doc. No. 108). However, the Court contemporaneously committed to deciding, prior to the receipt of such testimony, an issue of law directly relevant to Defendant's defense in this case: the enforceability of the Non-Solicitation Clause.[3] The Court thereafter rendered such decision, concluding that under applicable law (Wisconsin law, as both parties agree), the Non-Solicitation Clause is unenforceable and thus offers Defendant no defense to Plaintiff's claim. (Doc. No. 113). The evisceration of this defense had substantial potential significance in terms of what to do (or not do) to bring this matter to a conclusion in the district court. As the Court noted:

> Given how central this defense had heretofore been in this case, the effects of the Court's conclusion herein obviously are major. The Court's conclusion impacts how, when and for what purpose(s) the Court goes forward in this case, and it may counsel the Court and the parties to revisit the prior plan to complete the bench trial in part by recalling the two witnesses. The Court has its own preliminary thoughts about these issues, but it has formed no final opinion and wishes to hear the views of the parties.

(Doc. No. 113 at 17).

Thus, the Court ordered the parties to "(a) confer with one another about the issues that remain to be decided, when they should be decided, and how they should be decided; and (b) file a joint notice to the Court setting forth any mutually agreed recommendations they have on these issues and, to the extent they do not mutually agree, their respective differing views." (*Id.*). The parties were unable to reach an agreement, and so each filed its position on these issues (Doc. Nos. 115, 116), as well as responses to the other side's position (Doc. Nos. 118, 119).

---

[3] The Court is aware that Defendant, in an argument to which Defendant ascribes real consequence, disputes that the issue here is actually the "enforceability" of the Non-Solicitation Clause. (Doc. No. 109 at 1). Defendant seems to suggest that, properly couched, the issue is the "validity" of the Non-Solicitation Clause. The Court understands the gist of the distinction Defendant is trying to make; the Court grants Defendant that it is one thing to say that a contract clause can be "enforced" in the sense of being used by a company to seek affirmative relief against an employee, and it is another to say that a contract clause can be invoked by a company as a defense to claims brought by the employee. But the Court has found that this is a distinction without a difference here. (Doc. No. 113 at 2 n.2). Accordingly, the Court refers to the issue in terms of "enforceability."

3

## THE PARTIES' RESPECTIVE POSITIONS

Plaintiff's position is that "the Court has all the facts necessary to enter judgment in his favor, and that PendaForm cannot introduce any evidence or argument that will alter the fact that Slinger is entitled to judgment." (Doc. No. 115 at 1). As Plaintiff sees it:

> PendaForm conceded on the record during the November 25, 2019 bench trial that its sole defense to Slinger's breach of contract claim was that it had cause to terminate Slinger because he violated the non-solicitation clause in the Employment Agreement. (*See* Docket Entry 94, Official Transcript of Proceedings, at 26-27, 189). PendaForm's sole defense to Slinger's breach of contract claim no longer is available to it, as the Court determined that the non-solicitation clause is unenforceable under Wisconsin law. (*See* Docket Entry 113). Given the Court's decision on the unenforceability of the non-solicitation clause, PendaForm has no additional grounds on which to argue it had cause to terminate Slinger's employment. As a result, PendaForm undisputedly terminated Slinger's employment without cause.
>
> Because PendaForm now lacks any defense to Slinger's claim, the Court should enter judgment in Slinger's favor because the undisputed facts demonstrate that PendaForm breached the Employment Agreement.

(*Id.* at 1-2).

To this, Defendant responds, in essence, "not so fast!" According to Defendant, there is still much to be decided. As Defendant sees it:

> Plaintiff's position is grounded on the flawed logic that because the non-solicitation provision is unenforceable, PendaForm is unable to establish Plaintiff was terminated "for cause." First, Plaintiff's argument improperly places the burden of proof on PendaForm. The Agreement does not provide that Plaintiff is entitled to severance pay unless PendaForm can establish Plaintiff was terminated "for cause." Rather, under the terms of Plaintiff's Employment Agreement, Plaintiff is entitled to severance pay only if he complies with the Agreement's Competitive Activity, Confidentiality, and Non-solicitation provisions, and his employment is terminated "without cause." Plaintiff must actually establish his termination was "without cause" in order to prevail on his breach of contract claim.
>
> There is no question that the vast majority of the litigation to date has focused on whether Plaintiff's actions constitute breach of the non-solicitation provision found in the Agreement, which would qualify as a "for cause" termination scenario. PendaForm's position throughout the litigation has been that Plaintiff was terminated for what he did and what he said. One of those things was Plaintiff's act

4

of telling various employees "don't be the last man standing" in a manner and in a context which constitutes solicitation of employees, or gross misconduct, or both. The fact that Plaintiff did what he did and said what he said is undisputed. The impact of Plaintiff's words and actions in relation to the Agreement has never been decided.

(Doc. No. 118 at 1-2). Defendant further writes:

> Most recently, this Court ruled the non-solicitation provision is unenforceable, and that PendaForm cannot rely on it to establish Plaintiff was terminated "for cause." Based on that decision, Plaintiff claims he is entitled to a judgment in his favor for breach of contract. However, PendaForm is not precluded from arguing at trial that the same acts supporting a breach of the nonsolicitation provision qualify as gross misconduct supporting a "for cause" termination scenario. To the extent Plaintiff argues that PendaForm is precluded from asserting he engaged in gross misconduct, Plaintiff is incorrect. Legal conclusions made at oral argument, such as PendaForm's argument that it would rely on the Agreement's non-solicitation clause to refute Plaintiff's claim, are not binding. *Marr v. Commonwealth Land Title Ins. Co.*, 307 Fed.Appx. 952, 957 (6th Cir. 2009).
>
> The fact of the matter is that the Agreement specifies numerous employment termination scenarios that would qualify as a "for-cause" termination. Earlier in this litigation, the United States Court of Appeals for the Sixth Circuit noted Plaintiff's violation of the non-solicitation provision presents one way – but not the only way – that Plaintiff's employment could be terminated without entitling him to severance pay. *Slinger v. Pendaform Company*, 779 Fed. App'x. 378, 379 (6th Cir. July 11, 2019). The Sixth Circuit noted that gross misconduct had been another cited reason for Plaintiff's termination. Ultimately, in its Order remanding this case for trial, the Sixth Circuit explained that Plaintiff's act of telling employees "don't be the last man standing" and whether it amounted to a breach of the non-solicitation provision presented a question of fact, because the words were susceptible to more than one reasonable interpretation. Likewise, whether Plaintiff's actions qualify as gross misconduct presents a question of fact.
>
> Only if Plaintiff establishes that he complied with the Agreement's Competitive Activity, Confidentiality, and Non-solicitation provisions, **and** his employment was terminated "without cause," as that term is defined in the Agreement, is he entitled to severance pay. Instead, Plaintiff seeks to sidestep his burden of proof and obtain a judgment in his favor without ever having established his termination was "without cause."

(Doc. No. 118 at 3-4). Defendant accordingly asserts that the Court should not enter judgment in favor of Plaintiff, but rather should hold a "new trial . . . to determine whether Plaintiff is entitled

5

to severance pay under the Agreement's terms. Specifically, whether Plaintiff is able to establish that he complied with the Agreement's Competitive Activity, Confidentiality, and Non-solicitation provisions, and that his employment was terminated 'without cause' as that term is defined in the Agreement." (Doc. No. 118 at 4). According to Defendant, this is appropriate (or even necessary) because "[t]he record evidence only addresses whether Plaintiff was terminated for breaching the non-solicitation provision [and because] Plaintiff has not been relieved of his burden of establishing a breach of contract occurred simply because the non-solicitation provision is unenforceable." (*Id.*).

To all of this Plaintiff responds in pertinent part that Defendant has "abandoned" any defense based on termination for any cause other than violation of the Non-Solicitation Clause, (Doc. No. 119 at 2-3), that Defendant is incorrect to claim that Plaintiff bears the burden of proving that he was terminated without cause, (*Id.* at 3), and that Defendant's "insistence on retrying the case [is misguided because] taking the live testimony of witnesses a second time would not accomplish anything because there simply are no factual disputes left for the Court to decide."[4] (*Id.*).

So to summarize, Plaintiff argues essentially that: (1) it is undisputed that he has satisfied his burden of proof on his case in chief and thus is entitled to judgment unless Defendant can establish what amounts to an affirmative defense, *i.e.*, that Plaintiff was terminated for cause; (2) Defendant lacks any such cognizable defense because the non-solicitation clause is unenforceable

[4] The Court notes that what it initially proposed was not so much a "new trial" or a "retrial" so much as it was a reopening of the trial to allow live testimony of two witnesses (regarding any relevant topics, including those covered by their live testimony before Judge Campbell) before the undersigned to go along with all of the other evidence that had been admitted at trial. But whether considered a "new trial," a "retrial" or a "reopening" of the trial merely to allow additional testimony to assist the undersigned with credibility assessments, this has proven to be unnecessary, for the reasons discussed herein.

and Defendant has waived its right to assert any other grounds of termination for cause; and (3) there is nothing left for the Court to do now but enter judgment in his favor based on the existing record. Defendant, by contrast, essentially argues that: (1) the operative facts are not in dispute; (2) it remains to been seen whether Plaintiff can satisfy his burden of proof on his case in chief; (3) that for Plaintiff to do so successfully, he must establish (i) that his termination was a "termination without cause," here meaning not a "termination for cause"[5] and (ii) that he has complied with subparagraph (6)(d) and paragraph 7 of his Employment Agreement; (4) that Plaintiff, in meeting such burden, must show the absence of every kind of cause (reason) mentioned in the Employment Agreement's "termination for cause" provision; and (5) Plaintiff is not relieved of the need to make such a showing on the grounds that Defendant (supposedly) conceded that the only possible "cause" was breach of the Non-Solicitation Clause.

The Court next assesses the merits of each party's position.

## ANALYSIS

The Court begins by determining which party bears the burden of proof with respect to whether Plaintiff's termination was (or was not) with cause. Defendant argues that "Plaintiff must actually establish his termination was 'without cause' in order to prevail on his breach of contract claim." (Doc. No. 118 at 2). For this proposition, Defendant cites no authority; most likely, Defendant instead infers it from the general principle that the claimant must establish breach to

---

[5] As Defendant notes, the Employment Agreement (in subparagraph 8(f)) defines "Termination Without Cause" as "the termination by the Company or any subsidiary of Executive's employment with the Company or any subsidiary for any reason other than a termination for Permanent Disability or a Termination for Cause and shall not include the Company's failure to extend the Employment Period pursuant to subparagraph 5(b)." (Doc. No. 118 at 1 n.1); (*see also* Doc. 1-1 at 23). As termination for permanent disability is not implicated in this case, the definition of "termination without cause" boils down to termination other than a termination "for cause" as defined by subparagraph 8(e)—meaning a termination not for any of the nine reasons (causes) specified in subparagraph 8(e).

prevail in a breach of contract claim. But the problem for Defendant is twofold. First, it is far from clear that this general principle, even if it were applicable here, necessarily would entail that Plaintiff bears the burden of showing that his termination was without cause. In particular, Defendant has not explained why the correct rule is not that Plaintiff presumptively meets his burden of showing breach by showing merely his termination, leaving it to Defendant to establish (if it can) that the termination was for cause. Such a rule would make great sense in terms of judicial efficiency by narrowing the issues to be addressed; it would put the onus on Defendant to identify what alleged "causes" are truly at issue, rather than forcing Plaintiff to disprove the existence of umpteen conceivable causes—even those that clearly are inapplicable under the facts at issue. In any event, the Court is unconvinced that this is not the rule, and thus it cannot accept the implication that under the general principle, Plaintiff bears the burden of showing that his termination was "termination without cause."

Second, and more to the point, the Court would not rely on the general principle anyway, because Wisconsin law supplies a special rule applicable to the current issue. Specifically, as Plaintiff notes, (Doc. No. 119 at 3), the Supreme Court of Wisconsin has held that "[u]nder a contract providing for a fixed term of employment, the employer has the burden of proving that the employee was discharged for cause, where the employer relies on such a discharge as a ground for terminating the contract prior to its expiration date in the absence of any special provision in the contract providing to the contrary." *Johnson v. Green Bay Packers*, 74 N.W.2d 784, 790 (Wis. 1956). To be sure, *Johnson* is a relatively old case—so old that it was decided (a few months) before the great Bart Starr took over at quarterback for said Green Bay Packers. But *Johnson* has been quoted approvingly in judicial opinions far more recently, once in the (current) Aaron Rodgers era and once in the Don Majkowksi (a/k/a "Magic Man") era. *See Ramirez v. Pia*, No.

8

11–C–754, 2013 WL 950961, at *6 (E.D. Wis. Mar. 12, 2013); *Sevenz v. St. John's Military Academy*, No. 88-2110, 1989 WL 112001, at *1 (Wisc. App. July 12, 1989). And the Court discerns nothing to suggest that *Johnson* does not remain good law.

*Johnson* is applicable here. The Employment Agreement (as extended by mutual agreement of the parties) provided for a fixed term of employment (expiring July 11, 2017).[6] And Defendant relies on "termination for cause" as a ground for terminating the Agreement prior to the expiration date. Perhaps Defendant would make the technical argument that at this stage of the litigation, it is not relying on its (allegedly) having terminated Plaintiff for cause but rather on Plaintiff's (alleged) inability to show that he was terminated *without* cause. Such an argument, in addition to smacking somewhat of unhelpful hair-splitting, would ignore the fact that (i) Defendant undisputedly did rely, *at the time in question*, on termination for cause as grounds for terminating the Employment Agreement, (*see, e.g.*, Doc. No. 94 ("Trial Transcript") at 52, 176); and (ii) Defendant has relied on this fact *during this litigation.* Regarding the latter point, for example, Defendant specifically noted in its Answer that it "[a]ffirmatively alleges that on February 27, 2017, David Kruger informed Plaintiff that he was being terminated with cause." (Doc. No. 6 at 10). And at trial, on cross-examination of Plaintiff, its counsel elicited an affirmative answer to counsel's question of whether a violation of the Non-Solicitation Provision "would justify termination for cause." (Trial Transcript at 65-66).

So under *Johnson*, Defendant bears the burden of showing that Plaintiff was terminated for cause. This leads to the next question, which is what alleged cause(s)—which reasons listed in subparagraph 8(e)—Defendant should be permitted to assert at this late juncture. According to

---

[6] July 11, 2011 was the Effective Date of the Employment Agreement, (Doc. No. 1-1 at 14), which later was amended to extend Plaintiff's term of employment to six years from the Effective Date (as opposed to three years as in the original Employment Agreement). (*Id.* at 29).

Defendant, all options are on the table for it. But the law is decidedly against Defendant on this point. As the Sixth Circuit noted in one case:

> Under the Eastern District of Michigan Local Rule 16.2, a joint final pretrial order "*supersed*[*es*] the pleadings and *govern*[*s*] the course of the trial unless modified by further order." Additionally, courts hold that parties generally forfeit claims or defenses not raised in the final pretrial order.

*Ordos City Hawtai Autobody Co. v. Dimond Rigging Co.*, 695 Fed. Appx. 864, 875 (6th Cir. 2017) (internal citation omitted). And as the First Circuit has put it:

> A final pretrial order "is intended to 'control the subsequent course of the action,' and can be modified only 'to prevent manifest injustice.' " *Correa v. Hosp. San Francisco,* 69 F.3d 1184, 1195 (1st Cir.1995) (quoting Fed. R. Civ. P. 16(e)). Therefore, "[a]n appellate court should not lightly relieve a litigant from the condign consequences of its failure to list a theory . . . at that critical stage of the proceedings," *id.,* and "issues not included in the final pretrial order are generally waived," *id.* (citing *Ramirez Pomales v. Becton Dickinson & Co.,* 839 F.2d 1, 3 (1st Cir.1988)).

*Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 774 (1st Cir. 2010).

These principles are applicable here. First, similar to the local rule cited in *Ordos*, Judge Campbell's order setting trial in this case required the parties to state in their joint pretrial order that the pleadings are amended to conform to the pretrial order and that the pretrial order supplants the pleadings. (Doc. No. 76 at 2). Consistent with Judge Campbell's order, the parties' joint pretrial order stated exactly that. (Doc. No. 82 at 1). For this reason, and those explained in *Ordos* and *Rodriguez*, it was incumbent upon Defendant to include in the pretrial order all defenses and defense theories upon which it sought to rely. In the pretrial order, under "Defendant's theory" (which was devoted primarily to Defendant's version of the applicable facts), Defendant referred to only one legal issue: the proper legal construction of the contractual term, "solicit." (Doc. No. 82 at 2-3). Likewise, Defendant referred to only one theory: that Plaintiff was culpable of "soliciting" Defendant's employees because, consistent with the dictionary definition of

"solicit[ed]," Plaintiff "asked" or "advised" them to resign. (*Id.* at 3). And as for "Defendant's Issues," Defendant listed only the following:

> 1. Whether, having stipulated the Parties' contract is enforceable in its response to Penda's Statement of Undisputed Facts and having presented no argument to the contrary, the Plaintiff is now allowed to argue the solicitation provision is overly broad?
>
> 2. Whether Slinger telling employees "don't be the last man standing" constituted solicitation within the meaning of Paragraph 7(d) of the Parties' agreement?
>
> 3. Whether, under Wisconsin law, in a breach of contract case, after acquired evidence of the plaintiff's prior material breach precludes or reduces recovery under the contract?

(*Id.* at 4).

Clearly, in the pretrial order Defendant identified (quite intentionally, it appears)[7] only a

---

[7] By this time, Defendant had already advised the Sixth Circuit that it "is *only* relying on Slinger's alleged breach of the non-solicitation agreement rather than any of the other provisions." *Slinger v. Pendaform Co.*, 779 F. App'x 378, 379 n.1 (6th Cir. 2019). It is clear that Defendant has consistently focused on the Non-Solicitation Clause to the exclusion of possible other justifications for termination. This is to Defendant's credit, as it wisely focused on what it understandably perceived as its strongest argument (and the most relevant issue) rather than taking an undisciplined shotgun approach; this case was really about whether Plaintiff violated the Non-Solicitation Clause. This is reflected not only in the pretrial order but also in, for example, Defendant's proposed findings of fact and conclusions of law, wherein Defendant consistently focuses on the Non-Solicitation Clause from the beginning and quotes the Sixth Circuit opinion in stating that "the 'essential dispute' in this case is 'whether [Plaintiff's] words amounted to soliciting the employees to resign in violation of his employment contract.'" (Doc. No. 96 at 17). Defendant's counsel reflected this understanding at trial when, for example, he had the following exchange with Plaintiff:

> A. I think the claim is I violated the non-solicitation clause.
>
> Q. Yes, sir, I think that's right. Or soliciting any of them to resign from their employment; right?

(Trial Transcript at 64-65). Likewise, counsel for Defendant agreed with the Court at trial that "[t]he basis for termination . . . is breach of the non-solicitation provision in the contract[.]" (*Id.* at 27). Along the same lines, Defendant's president, Mr. Kruger, agreed at trial with counsel for Plaintiff that "the sole basis that the company is saying they don't owe him now is for this breach

11

single theory and a single issue relating to the cause for Plaintiff's termination. It was breach of the Non-Solicitation Clause, and only the breach of the Non-Solicitation Clause. As Defendant itself noted (in its proposed findings of fact and conclusions of law) in asserting that Plaintiff had waived a particular issue, failure to raise an issue in the pretrial order generally waives the issue. (Doc. No. 96 at 21-22).

There is a related principle that likewise cuts against Defendant. Generally, "[a]rguments that could have been raised at trial, but were not, will not be considered on remand." *Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 342 (4th Cir. 1992), *vacated on other grounds*, No. 91-1873(L), 1993 WL 524680 (4th Cir. Apr. 7, 1993). The Court does not see why this basic principle would not apply to a trial (like this one) that unexpectedly became subject to possible reopening, just as it applies to a retrial upon remand. So, like the failure to raise other causes for termination in the pretrial order, Defendant's failure to raise such causes at trial counsels in favor of precluding assertion of them at the reopened trial; Defendant's failure to raise them in the pretrial order put Defendant behind the eight ball, and Defendant's position became that much more precarious (and indeed untenable) due to its failure to raise them at the first go-round of the trial.

True, if a party did not raise an issue at a first trial, perhaps the party still could properly raise it at a retrial (or, in this case, a potential reopened first trial) *if* the party did not have an opportunity to raise the issue in the first trial or lacked the same incentive to raise the issue at the

---

of the non-solicitation clause." (*Id.* at 189). And Judge Campbell (without pushback from counsel for Defendant) at trial summarized Defendant's position as follows:

> This case is about a claim by the plaintiff against the defendant for breach of—a specific provision—breaching the contract for termination and not paying him that. The answer to that is, we terminated him under this provision, which is the non-solicitation provision.

(*Id.* at 26).

first trial that it has the second time. *See id.* (raising possibility that plaintiff's challenge to a damages cap, not raised at trial, could be raised at retrial if the damages cap was not relevant at the first trial, because "arguments not relevant at the first trial may be considered on remand"); *Howe v. City of Akron*, 801 F.3d 718, 751-52 (6th Cir. 2015) (City did not waive argument that reduction of back-pay award in firefighters' discriminatory failure to promote suit was warranted pursuant to lost-chance theory due to its failure to raise issue during first trial, where firefighters did not argue for back pay or request back-pay jury instruction during first trial, thereby precluding city from presenting argument for lost-chance back-pay calculations). But that is not the case here. Defendant had every opportunity to raise any and all causes for termination that existed at the bench trial before Judge Campbell, and it had the same incentive to do so then as it does now.

In short, the Court sees no reason to deviate from the general rule that Defendant has waived (or forfeited)[8] its prerogative to assert cause(s) for termination other than violation of the Non-solicitation Clause. Defendant cannot be permitted to raise such alleged cause(s) at this late stage for the first time merely because, whereas they once seemed inconsequential, they are now Defendant's only option since the Non-Solicitation Clause was declared unenforceable. If Defendant thought it was important to raise other alleged causes for Plaintiff's termination, the time to do so was in the pretrial order and then at trial, especially since Plaintiff had raised the

---

[8] "The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. '[F]orfeiture is the failure to make the timely assertion of a right [;] waiver is the "intentional relinquishment or abandonment of a known right."'" *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). The Court is inclined to believe that it is dealing here with waiver rather than forfeiture. Again, "[a] waiver is '"the intentional relinquishment or abandonment of a known right.'" *PolyOne Corp. v. Westlake Vinyls, Inc.*, 932 F.3d 692, 697 (6th Cir. 2019) (quoting *Olano*, 507 U.S. at 733). Defendant's decision to abandon its prerogative to assert defenses other than the alleged violation of the Non-Solicitation Clause certainly appears intentional.

13

specter of the unenforceability of the Non-Solicitation Clause by the time of the pretrial order. (Doc. No. 82 at 2).

So the Court agrees with Plaintiff that, in Plaintiff's words, Defendant "abandoned"[9] any defense based on causes for termination other than breach of the Non-Solicitation Clause. The Court likewise finds that Defendant abandoned the related defense, to which Defendant devotes less attention in its filings, that Plaintiff is unentitled to severance because he has not shown "compliance" with all of his obligations under subparagraph 6(b) and paragraph 7 of the Employment Agreement (including the "Agreement's Competitive Activity, Confidentiality and Non-solicitation provisions"). (Doc. No. 118 at 3). If Defendant wished to assert that non-compliance with any provision other than the Non-Solicitation Clause was grounds not to pay Plaintiff severance, the time to raise it was in the pretrial order and at trial before Judge Campbell; Defendant cannot raise it now, for the first time, as a reaction to the Court declaring the Non-Solicitation Clause unenforceable.

The immediate question is what all of this means in terms of next steps for this case. Plaintiff argues that additional trial testimony is not necessary. The Court agrees; particularly with no issue remaining as to whether Plaintiff's termination was "for cause," there are no factual issues left for the Court to decide—or, to be more precise, no factual issues to decide that require additional testimony because they require credibility determinations or otherwise are in genuine dispute. Instead, the Court can issue findings of fact and conclusions of law based on the record to date. And whereas one side or the other (and the Court would be unduly coy were it to deny that it is talking here about Defendant) may not like or agree with the Court's forthcoming conclusions of law, the Court has no doubt that any such disagreement will have nothing to do with the Court's

---

[9] As suggested above, "abandonment," if intentional, is the same thing as waiver.

factual findings and everything to do with the Court's conclusions of law (including its prior determination that the Non-Solicitation Clause is unenforceable). For this reason, the Court will, as Plaintiff urges, forgo the taking of additional testimony. The Court will not waste the parties' or the Court's resources on such an unnecessary exercise.

## CONCLUSION

Given the Court's conclusion that the Non-Solicitation Clause is unenforceable and that Defendant has lost its prerogative to assert other causes to justify Plaintiff's termination, and the parties' mutual assertions that the essential facts are not in dispute, there is no need to effectively reopen the bench trial for additional testimony. The Court will instead proceed directly issuing findings of facts and conclusions of law as soon as feasible.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE