IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JACK L. SLINGER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:17-cv-00723 JUDGE RICHARDSON |
| THE PENDAFORM COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The instant case, which is now on its seventh year and its third assigned district judge, is in the district court for its third stint here, after a second remand from the United State Court of Appeals for the Sixth Circuit. As the Sixth Circuit suggested at the end of its opinion directing the second remand (Doc. No. 175), it is time to "conclude this story." (*Id.* at 9).[1]

### BACKGROUND

The above-referenced second appeal to the Sixth Circuit was taken by Defendant after the undersigned entered judgment for Plaintiff against Defendant, The PendaForm Company ("PendaForm), in the amount of $757,712.08 on March 3, 2021. (Doc. No. 132 at 4).[2]

---

[1] When citing to a page in the Sixth Circuit's opinion or a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of ___") added by the Clerk's Office at the bottom of the page as part of the pagination process associated with Electronic Case Filing in this case, if such page number differs from the page number originally provided by the author/filer of the document.

[2] This case was reassigned to the undersigned from Judge Campbell (to whom the case previously had been reassigned from Judge Trauger) after the below-referenced bench trial but prior to the Court's issuance of findings of facts and conclusions of law.

PendaForm Company, a plastic-manufacturing business, hired Jack Slinger to be its president and CEO. But when new owners bought PendaForm a few years later, they scaled back Slinger's role at the company. While they waited for Slinger's contract to run out, he was told to work from home.

Not long after he started working from home, Slinger visited his old office to clear out his things. During his visit, Slinger allegedly warned several employees they should not "be the last man standing." When the company caught wind of the statement, it fired Slinger within a week.

PendaForm's termination letter said it fired Slinger "for cause" under his contract. But Slinger didn't think the company had cause to fire him. And if it didn't have cause, Slinger is eligible for twelve-months' severance—worth hundreds of thousands of dollars. So Slinger sued, claiming he was fired without cause and should receive his severance.

The district court granted PendaForm's motion for summary judgment, concluding that Slinger's statement violated the contract's non-solicitation clause. We reversed and remanded for trial. *See Slinger v. PendaForm Co.* (*Slinger I*), 779 F. App'x 378, 383 (6th Cir. 2019).

And at the trial stage, the district court let Slinger raise another argument: Even if he did violate the non-solicitation agreement, it was void under Wisconsin law. But the court refused to let PendaForm introduce a further justification for firing Slinger: evidence it had acquired during discovery that revealed Slinger had an affair with a subordinate.

The district court issued a series of orders after the bench trial. In the first, the court ruled that the non-solicitation agreement was void, so PendaForm couldn't fire Slinger for violating it even if his statement was "solicitation." The court also ruled that PendaForm waived all other arguments that might support a for-cause firing and concluded that PendaForm thus breached the contract by withholding Slinger's severance.

(Doc. No. 175 at 2-4) (footnotes omitted).[3]

---

[3] The (two) footnotes omitted from the block quote respectively stated, helpfully, as follows:

1 Though the letter didn't specify a cause, for-cause firing under the contract may be for various reasons, including gross misconduct or violating the contract's non-solicitation clause.

2 The district court framed this question as one of enforceability. But PendaForm never tried to enforce the non-solicitation agreement against Slinger; it merely relied on it as a reason for firing him. So the more precise question is whether the non-solicitation clause is unlawful and thus void under Wisconsin law, rather than whether it's enforceable. See

The Sixth Circuit noted that PendaForm raised three issues in challenging the judgment and that each issue would be resolved sequentially:[4]

> [PendaForm] contends the district court erred in (1) holding that the contract's non-solicitation clause is void; (2) finding that PendaForm waived or forfeited its argument that Slinger's statement constituted gross misconduct that warranted firing; and (3) barring PendaForm from admitting evidence of Slinger's relationship with a subordinate. We take each in turn, reviewing the district court's legal conclusions de novo and its waiver and forfeiture determinations for an abuse of discretion.

(*Id.* at 4). The Sixth Circuit rejected each of PendaForm's first two arguments. On the third argument, however, PendaForm fared better. After finding that PendaForm had neither waived nor forfeited the argument, the Sixth Circuit found that the Court erred in excluding the referenced evidence (hereinafter, "after-acquired relationship evidence") for the particular reason that the Court excluded it, namely, that under Wisconsin law, so-called "after-acquired evidence"[5] cannot be used to as an independent basis to justify a firing for cause. Specifically, based primarily on a 1911 case from the Wisconsin Supreme Court, *Loos v. George Walter Brewing Co.*, 129 N.W. 645 (Wis. 1911), the Sixth Circuit found that "[t]he after-acquired-evidence defense applies to breach-of-contract claims in Wisconsin," so that by "using this affirmative defense, an employer can fire

---

> Wis. Stat. § 103.465. Though the two are analogous under the Wisconsin statute, we reframe the inquiry as voidness for accuracy.

(Doc. No. 175 at 3 n. 1-2).

[4] As is not atypical for an appellee, PendaForm made clear in its notice of appeal that it was challenging not just the judgment as such, but also various underlying decisions that underlay the judgment, including but not limited to the Court's findings of fact and conclusions of law. (Doc. No. 134).

[5] As the Sixth Circuit noted, this phrase refers to evidence acquired during litigation, after the termination for cause that the evidence is invoked to justify. (Doc. No. 175 at 7).

an employee based on misconduct that constitutes cause, regardless of whether the employer knew about the misconduct at the time of termination." (Doc. No. 175 at 8).[6]

But the Sixth Circuit did not preclude the possibility that the after-acquired relationship evidence could be excluded on *other* grounds. To the contrary, the Sixth Circuit noted that "a single issue remains: Whether PendaForm's after-acquired [relationship] evidence is otherwise admissible." ((*Id.* at 9). In other words, it remained possible that such evidence could still be appropriately excluded for some other reason. And the Sixth Circuit clearly had in mind a particular other reason potentially could be: that the after-acquired evidence defense was barred because it was not raised in PendaForm's answer, and had not been added via a court-authorized amendment to the answer.

So the Sixth Circuit noted that this Court on remand should consider the after-acquired relationship evidence "if"—by which the Sixth Circuit clearly meant "if but only if"—"it determines that PendaForm may amend its answer to add the after-acquired-evidence defense." (*Id.* at 9 n. 5). Spelling things out clearly, the Sixth Circuit instructed as follows:

> So on remand, the district court should first consider whether PendaForm may amend its answer to add this affirmative defense. If it can, the court should then address (1) whether the after-acquired evidence can be used here, and (2) whether PendaForm can show that it could and would have terminated Slinger based on that evidence. The answers to these questions ought to conclude this story.

(*Id.* at 9) (footnote omitted). Jurisdiction was returned to this Court via issuance of the Sixth Circuit's mandate (Doc. No. 176). Thereafter, at the suggestion of the magistrate judge, to tee up

---

[6] The Court is constrained to note that this phrasing—"an employer can fire an employee based on misconduct that constitutes cause, regardless of whether the employer knew about the misconduct at the time of termination."—seems a bit inexact. It would seem that an employer cannot possibly *fire an employee based on* misconduct that constitutes cause unless the employer knows about it at the time of the firing. Stated more precisely, the after-acquired evidence defense allows an employer to *justify a firing, after-the-fact*, by asserting pre-termination misconduct that constitutes cause, even if the employer did not know about the misconduct at the time of the termination.

the Sixth Circuit's above-state issues for the undersigned to decide, PendaForm filed a Motion for Relief on Remand (Doc. No. 180, "Motion for Relief"), with a supporting memorandum (Doc. No. 180-1), which asserts that the preliminary question as well as the two enumerated questions from the Sixth Circuit all should be answered in the affirmative; the Motion for Relief serves, relatedly to the preliminary question, essentially as a second motion to amend PendaForm's answer to add the after-acquired evidence defense. Plaintiff filed a response (Doc. No. 181) in opposition to the Motion for Relief, unsurprisingly urging the Court to answer each such question in the negative and thus, inter alia, deny Defendant's second motion to amend the answer. Defendant then filed a reply (Doc. No. 182) in support of the Motion for Relief.

For the reasons set forth below, the Court answers the Sixth Circuit's preliminary question in the negative; accordingly it need not and does not reach the latter two (enumerated) questions. And the effect of the Court's answer to the preliminary question is that there is no occasion to reopen the evidence, or otherwise revisit anything, in this case. So the Court's original judgment will be re-entered on remand.

LEGAL STANDRADS

Federal Rule of Civil Procedure 15(a) typically governs motions to amend the pleadings before trial. Fed. R. Civ. P. 15(a). However, where, as here, a motion to amend is filed after the deadline set forth in the Court's scheduling order, the standards of both Rule 15(a) and Rule 16(b) apply. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Rule 16(b) provides that the deadline for amendment of pleadings set forth in the Court's scheduling order can be extended "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This rule was "designed to ensure that 'at some point both the parties and the pleadings will be fixed.'" *Leary*, 349 F.3d at 906 (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment). Thus,

"[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Id.* at 909. The "good cause" requirement in Rule 16 is satisfied only where the movant shows "that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014).

If (but only if) the Court finds that good cause exists, it then considers whether amendment is appropriate under Rule 15. Rule 15(a)(2) provides that district courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "mandate" flows from the principle that a plaintiff "ought to be afforded an opportunity to test [their] claim on the merits" where "the underlying facts or circumstances relied upon . . . may be a proper subject of relief . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.— the leave sought should, as the rules require, be 'freely given.'" *Leary*, 349 F.3d at 905 (quoting *Foman*, 371 U.S. at 182). A proposed amendment is futile when it would not survive a motion to dismiss under Rule 12(b)(6). *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "A district court's order denying a Rule 15(a) motion to amend is usually reviewed for an abuse of discretion." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *but see id.* (reviewing *de novo* district court's denial of "motion for leave to amend on the basis of futility"). Nevertheless, Sixth Circuit case law "'manifests "liberality in allowing amendments to a complaint."'" *Newberry*

*v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987)). But as indicated above, when a motion to amend is filed after the applicable deadline for moving to amend, this liberality does not come into play unless the movant is granted relief from such deadline pursuant to Rule 16(b).

ANALYSIS

The cognizability (or lack thereof) of PendaForm's first motion to amend the answer (Doc. No. 33, "First Motion to Amend"), is relevant to the Court's consideration of the (instant) second motion to amend the answer. In the First Motion to Amend, upon which the Court never ruled, PendaForm did what it now does: request permission under Rule 15(a) to add the after-acquired evidence defense. The Court is aware that the current issue is whether leave to amend the answer should be granted now, and not whether leave to amend should have been granted years ago pursuant to the First Motion to Amend. But to the extent that the First Motion to Amend was not meritorious (or, because of tardiness for which good cause was not shown under Rule 16(b), not even cognizable at all), that naturally makes it that much more difficult for PendaForm to establish the appropriateness of the Court granting, at this much later date, a second motion to amend the answer. In particular, if the tardiness was not shown to be excusable then, it is harder to show why the tardiness should be excused now.

PendaForm relies heavily on the Sixth Circuit's statement that, as paraphrased by PendaForm, "once PendaForm learned of the evidence, PendaForm pressed this issue [the after-acquired evidence defense] at each stage of the litigation." (Doc. No. 180-1 at 1). But this observation applies only to the time period beginning when PendaForm first "pressed" the after-acquired evidence defense, which did not happen until April 20, 2018, when PendaForm filed its First Motion to Amend as well as a summary judgment motion and accompanying memorandum

(Doc. Nos. 34, 35) relying on this defense. The Sixth Circuit's point was that *once PendaForm raised this defense*, it consistently asserted it (even if the Court did not really acknowledge it by, for example, actually adopting/entering the proposed pretrial order that referred to this defense or deciding PendaForm's First Motion to Amend). But that is *not* to say that PendaForm raised the defense in a timely or otherwise appropriate manner, and it is not to say that the (instant) second motion to amend the answer must be granted. And whether PendaForm did raise the issue in a timely and otherwise appropriate manner prior to the bench trial is a question that will bear on whether the Court should grant the pending second motion to amend the answer—and thereby inject the after-acquired evidence defense into the case, such that the Court's judgment must be revisited.

PendaForm also relies on the contents of the proposed pretrial order in this case (Doc. No. 82, filed November 11, 2019), which states (as by Court order it was required to, Doc. No. 76 at 2) that "[t]he pleadings are amended to conform to this Pretrial Order, and this Pretrial Order supplants the pleadings" and lists one of "Defendant's Issues" as "[w]hether, under Wisconsin law, in a breach of contract case, after acquired evidence of the plaintiff's prior material breach precludes or reduces recovery under the contract?" (Doc. No. 82 at 4). But these facts alone do not mean that the after-acquired evidence defense was a defense cognizable at trial. This is clear for several reasons. First, as the Sixth Circuit noted, the issue remains as to whether PendaForm's answer can be amended to add this defense; this necessarily means that this issue was not obviated by the contents of the proposed pretrial order. Second, for whatever reason, the proposed pretrial order was never (signed and) entered by the Court, and so it is far from clear that the Court puts its imprimatur on the proposed pretrial order. Third, although the proposed pretrial order was "joint," that does not necessarily mean that Plaintiff "joined" Defendant in any suggestion that

"Defendant's Issues" all were properly before the Court. To the contrary, and fourth, it was already clear that Plaintiff expressly did *not* agree to this; one week prior to the filing of the pretrial order, Plaintiff had filed a motion in limine to exclude the after-acquired relationship evidence (Doc. No. 77), on the grounds, inter alia, that PendaForm's First Motion to Amend was filed many months too late.[7] (*Id.* at 3).

Fifth, after the pretrial order was filed, the Court made clear, via its granting of Plaintiff's motion in limine, that it viewed the defense as improper for trial (albeit not because the motion to amend was tardy and/or had not been granted).[8] Sixth, as to whether the after-acquired evidence defense was properly excludable on the grounds that it was not mentioned in PendaForm's answer and would not be allowed by amendment to that answer, the Court simply never said prior to trial, and so it certainly did not reject the notion the a motion to amend the answer should be denied as untimely.

---

[7] Plaintiff represented that the First Motion to Amend was "more than six months" late, (Doc. No.at 3), but by the Court's calculation it was filed not quite six months late, inasmuch as November 1, 2017 to April 20, 2018 spans a little over five and one-half months.

[8] The Court's action here—rejecting a defense (or "issue") that a party had placed into a pretrial order that was never signed or entered by the Court calls to mind *Heil Co. v. Evanston Ins. Co.*, No. 1:08-CV-244, 2011 WL 13077070 (E.D. Tenn. Sept. 27, 2011), *aff'd in part, vacated in part on other grounds*, 690 F.3d 722 (6th Cir. 2012):

> It should be noted, though, that the parties' Proposed Final Pretrial Order . . . which was submitted . . . three days before the Court's ruling on the parties outstanding dispositive motions . . . which [ruling] substantially changed the claims that would actually be tried – does not appear to ever have been actually signed by the Court and entered as a Final Pretrial Order . . . .

*Id.* at *6. The court's point there seemed to be the Court's point here: a proposed pretrial order, especially one that is never signed and entered by the Court, does not govern the issues cognizable at trial to the extent that it conflicts with a later ruling of the court.

For all of these reasons, although the Court sees why PendaForm would rely on the contents of the proposed pretrial order, those contents mean that (i) leave to amend to add the after-acquired evidence defense had effectively been granted; or (ii) the need for PendaForm to obtain leave to amend its answer prior to the bench trial had been obviated; or (iii) the need for PendaForm *now* to obtain leave to amend its answer has been obviated. In short, PendaForm currently needs to show why this defense should be injected into this case at this juncture via the granting of its second motion to amend the answer.

PendaForm filed its First Motion to Amend more than five and a half months after the November 1, 2017 deadline for amendments to pleadings that was established via the initial case management order in this case. (Doc. No. 15). Accordingly, to even request leave to amend the answer, PendaForm had to establish grounds for extending the deadline for such an amendment long after the expiration of such deadline. In other words, before the Court could even have considered the merits of PendaForm's First Motion to Amend (under Fed. R. Civ. P. 15), it would need to be persuaded that there were grounds to excuse the tardiness of that motion (under Fed. R. Civ. P. 16(b)) such that it was actually cognizable.

PendaForm did nothing whatsoever to attempt to persuade the Court of this. Its First Motion to Amend was a mere single page in length, and it was not supported by an accompanying brief. And its sparse contents made no mention of its tardiness or of Rule 16(b), let alone present any argument as to why such tardiness was excused under Rule 16(b). And this deficiency was specifically called to its attention by Plaintiff in its response to the First Motion to Amend; therein, Plaintiff argued inter alia that such motion "should be denied because it submitted the request well beyond the deadline established by the Court for filing motions to amend pleadings, " that "[a]lthough Rule 15(a) instructs courts to freely give leave **[to amend]** when justice so requires, a

Rule 16(b) scheduling order controls the course of the action, and the expiration of a relevant scheduling order deadline may foreclose the parties' opportunity to rely upon Rule 15(a)'s liberal standard," that "[o]nce a scheduling order's deadline passes, a **[party]** must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)," and that "PendaForm does not seek leave to amend the Initial Case Management Order, nor does it even attempt to establish good cause to modify the deadlines established by the Court." (Doc. No. 45 at 1, 2 ) (internal quotation marks omitted) (bolded brackets in original).

These assertions were undeniably correct, so one would have thought that PendaForm would have filed a reply acknowledging its tardiness and the need to satisfy Rule 16 and then attempting to satisfy the rule. But PendaForm filed no reply, which in the Court's view was tantamount to conceding that the First Motion to Amend was foreclosed based on its never-excused tardiness. But whether or not PendaForm effectively conceded this, and regardless of the Court never having ruled on the First Motion to Amend, the First Motion to Amend was unexcusedly tardy and thus not even cognizable, let alone demonstrably worthy of granting.

This puts PendaForm behind the metaphorical eight ball in seeking leave to amend the answer now. As has been made very plain to it by Plaintiff, it still must show good cause under Rule 16(b) for its failure to file a motion to amend the answer via the original deadline—a showing certainly made more difficult by the fact that PendaForm *failed to even try* to establish good cause the first time it sought to amend its answer; if PendaForm could not have been bothered years ago to try to establish good cause under Rule 16(b), one wonders how it can be deemed to have good cause now.

Perhaps there is a way. But if there is, amazingly, PendaForm does not attempt to show what it is. In neither the Motion for Relief, the brief in support thereof (Doc. No. 180-1), nor the reply in support thereof (Doc. No. 182) does PendaForm even mention the tardiness or Rule 16(b), let alone explain why the Rule 16(b) standard excuses the tardiness in this case. These omissions are especially surprising with respect to PendaForm's reply. In his response (Doc. No. 181), Plaintiff specifically argued, just as he did the first go-round, that PendaForm's second motion to amend the answer should be denied because it was untimely and came with no a showing of good cause for the tardiness under Rule 16(b), and because "[o]nly if the movant establishes 'good cause' will the court 'proceed[] to the more permissive Rule 15(a)(2) analysis.'" (Doc. No. 181 at 4) (quoting *Stewart v. King*, 2011 WL 237678, at *5 (M.D. Tenn. Jan. 24, 2011)) ((quoting *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010))).

The Court can only guess, and need not determine, why PendaForm ignored the need to justify, under Rule 16(b), the tardiness of its motion to amend. Perhaps it was because PendaForm concluded that applicable circumstances would not have justified the request anyway, and thus figured it was best to just ignore the issue and hope that somehow it went away. But it has not, and PendaForm's failure to address this issue by itself dooms its second motion to amend the answer.

The Court concludes alternatively, based on the record as it stands, that in fact applicable circumstances would not have justified leave to late-file even the First Motion to Amend, let alone the second motion to amend. Rule 16(b) requires a showing a diligence by the moving party; here, that would mean diligence in seeking the kind of information that ultimately formed the basis of both motions to amend. The Court cannot find the existence of such diligence here, because PendaForm did not even serve any written discovery until after the deadline to move to amend had passed, (Doc. No. 181-1), and did not depose Plaintiff until March 16, 2018, (Doc. No. 33-1),

nearly five months until after expiration of the deadline to move to amend. So PendaForm cannot be credited with diligence in seeking the kind of information parties typically seek in order to, among other things, determine whether to move to amend their pleadings. But even once PendaForm did became aware of the information based on which it sought to amend its answer, it did not move with diligence. Plaintiff confirmed for Defendant the existence of his extramarital affair with a subordinate at his (March 16, 2018) deposition;[9] his statement confirming the affair was obviously itself admissible after-acquired relationship evidence. So PendaForm had such evidence by March 16 (and clearly had reason to believe of the existence of the affair prior to the deposition, since its attorneys knew to ask about it at the deposition). And yet PendaForm, with the deadline for leave to amend already far behind it, nevertheless waited *five more weeks*—until April 20, 2018, the day before summary-judgment motions were due—to move to amend its answer. This does not reflect diligence; quite the opposite.

The upshot is that PendaForm never even raised grounds to justify under Rule 16(b) *the late filing* of a motion to amend; still less has it consistently "pressed" a justification—which under the instant circumstances is just as indispensable as is a justification for under Rule 15(a) for the underlying proposed amendment—throughout this litigation. In short, to this day, PendaForm has never properly asked for, let alone received, leave to file a post-deadline motion to amend its answer, and the record is devoid of information to support such leave. Thus, the Court need not even reach the after-acquired evidence defense or, for that matter, the second motion for leave to amend the answer to add that defense.

---

[9] When asserting the relevance of the after-acquired relationship evidence, Defendant expresses a dim view of the extra-marital relationship at issue. The Court gets Defendant's point here, but as explained herein, ultimately it need not address the substantive relevance (let alone the asserted nefariousness) of that relationship.

CONCLUSION

As discussed above, the second motion to amend the answer (encompassed within the Motion for Relief) is not cognizable because it was unjustifiedly filed too late. This is fatal to the entire Motion for Relief. Accordingly, the Motion for Relief (Doc. No. 180) will be **DENIED**.

This leaves nothing for the Court to do to "conclude this story," in the words of the Sixth Circuit, other than to enter judgment, which the Court intends to do in the same amounts reflected in the prior judgment in this case (Doc. No. 132) it had entered prior to the last appeal to the Sixth Circuit, except possibly with an increase in the amount for prejudgment interest based on the lapse of time between the original judgment (March 3, 2021) and the present day. By June 1, 2023, the parties shall submit either separate proposals or a joint proposal for the figure for prejudgment interest to include in the anticipated judgment.[10] An appropriate judgment thereafter will be entered.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[10] In the view of the Court, by proposing a figure for prejudgment interest, PendaForm would not in any way whatsoever waive or forfeit any objection to an award of prejudgment interest, to this memorandum opinion, or to the anticipated judgment.